UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CURTIS RONALD RABENBERG, <br> Movant, <br> vs. <br> UNITED STATES OF AMERICA, <br> Respondent. | 4:21-CV-04015-KES <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion pursuant to 28 U.S.C. § 2255 of Curtis Ronald Rabenberg, a federal inmate.  See Docket No. 1.[1]  Now pending is a motion by the United States of America ("government") to dismiss Mr. Rabenberg's § 2255 motion without holding an evidentiary hearing.  See Docket No. 19.  Mr. Rabenberg resists the motion.  See Docket Nos. 22, 27, 28 & 29.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

---

[1] Documents referenced in this civil proceeding will be cited by the docket number assigned.  Documents referenced from Mr. Rabenberg's underlying criminal case, United States v. Rabenberg, 4:20-CR-40065-KES (D.S.D.) will be referenced by citing the docket number preceded by "CR."

## FACTS

### A.    Mr. Rabenberg's § 2255 Petition

Mr. Rabenberg timely filed a motion with this court pursuant to 28 U.S.C. § 2255.[2]  He raises a single claim of ineffective assistance of counsel. He asserts that his counsel in his federal case advised him that he could plead guilty to pending state charges without the state court plea adversely affecting his United States Sentencing Guidelines ("USSG") calculation so long as the state court sentencing occurred *after* the federal court sentencing. Mr. Rabenberg accepted this advice and entered an Alford plea[3] to his state charges but, contrary to counsel's alleged advice, the state court plea *did* adversely affect his USSG calculation, resulting in a longer sentence.  The facts discussed below are pertinent to Mr. Rabenberg's claim and are drawn from the pleadings herein as well as from the record in his underlying criminal case.

### B.    Initial Appearance and Plea of Guilty

Mr. Rabenberg was indicted in this court on July 20, 2020, and charged with two counts of being a felon in possession of a firearm, once on November

---

[2] There is a one-year statute of limitations for filing a § 2255 motion which began to run in Mr. Rabenberg's case at the time his conviction and judgment became final.  See 28 U.S.C. § 2255(f).  He was sentenced on December 7, 2020.  CR Docket No. 34.  His sentence became final when his time to appeal expired 14 days after sentencing—December 21, 2020.  FED. R. APP. P. 4(b)(1)(A).  He timely filed his § 2255 motion a little over one month later on January 28, 2021.  Docket No. 1.

[3] See North Carolina v. Alford, 400 U.S. 25, 37 (1970).  In an Alford plea the defendant consents to the imposition of a criminal sentence without admitting his guilt.  Id.  Such a plea is indistinguishable from a guilty plea for purposes of collateral consequences.  United States v. Salean, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009).

19, 2019, and once on November 21, 2019.  CR Docket No. 1.  Mr. Rabenberg made his initial appearance in this court on July 29, 2020, appearing on a writ of habeas corpus ad prosequendum out of Minnehaha County.  CR Docket Nos. 4 & 7.  Attorney Matthew Powers was appointed to represent Mr. Rabenberg, and he was ordered to be detained in federal custody. CR Docket Nos. 8 & 9.

At the time of his initial appearance, Mr. Rabenberg had the following history of criminal convictions:  two 2006 driving under the influence ("DUI") charges from Lincoln County; two 2006 DUIs from Turner County; a 2010 DUI third offense from Minnehaha County; a 2010 misrepresentation to obtain controlled substance from Minnehaha County; a 2010 DUI third offense from Minnehaha County; a 2010 DUI third offense from Lincoln County; a 2015 DUI sixth or subsequent offense from Lincoln County; a 2015 simple assault— domestic violence offense from Lincoln County; a 2015 violation of conditional bond from Lincoln County; a 2015 violation of a protection order from Minnehaha County; a 2016 violation of protective order from Lincoln County; and a 2017 DUI offense with an arrest date and a disposition date of February 21, 2017, for which Mr. Rabenberg was sentenced to seven years custody.  CR Docket No. 5 at pp. 2-4.

In addition to these convictions, at the time of his initial appearance, Mr. Rabenberg also had the following pending matters in state court: (1) January 2020 charges of attempted domestic abuse—rape, domestic abuse—kidnapping, domestic abuse—simple assault, interference with

emergency communications, intentional damage to property, and habitual offender, all pending in Lincoln County; and (2) May 2020 charges of violation of a protection order and domestic abuse—violation of a protection order in Lincoln County.  Id. at pp. 4-5.

Counsel met with Mr. Rabenberg in person on August 17, 2020, at the Minnehaha County Jail.  Docket No. 12 at p. 2, ¶ 3.  Counsel gave Mr. Rabenberg an estimate of his USSG range.  Id.  Counsel projected that his total offense level would be 13 if he entered a plea of guilty.  Id.  However, counsel explained estimating Mr. Rabenberg's criminal history points and category was difficult.  Id.

Using the past convictions in the bond report, counsel told Mr. Rabenberg it was unclear whether his 2006 DUI convictions would impact his criminal history category.  Id. at ¶ 4.  Counsel erred on the side of caution and counted all of Mr. Rabenberg's DUIs and advised Mr. Rabenberg he may have as many as 21 criminal history points, placing him in criminal history category VI.  Id.  At this August 17 meeting, Mr. Rabenberg asked counsel to contact his lawyer in his state case, Koln Fink.  Id.

Counsel telephoned Mr. Fink the following day.  Id. at ¶ 5.  After the phone conversation, counsel sent Mr. Fink a follow-up email the same day.  Id. The email read as follows:

> Koln,
>
> Curtis' criminal history is a bit of a mess.  So, take this with a grain of salt.  I think he may actually have 11 criminal history points, which would put him in criminal history category V.

> A conviction and sentence in state court could negatively affect his federal sentence.
>
> If his entire state conviction were suspended, it would not hurt him.
>
> If he were sentenced in state court, after he is sentenced federally would not hurt him.
>
> If the state judge gives him any credit for the time he has sat in state custody, he will not get any credit for it by the BOP.
>
> Those are the major issues I see right now.
>
> I will keep you apprised of when we have a plea in hand, etc.
>
> Matt

Id. at p. 3, ¶ 5.  Counsel received a plea offer from the government on August 19, 2020.  Id. at ¶ 6.  Counsel did not contact Mr. Fink to report that development.  Id.  Counsel never spoke to Mr. Fink again about this case.  Id.

Mr. Rabenberg points out that counsel's email is susceptible to the interpretation that a plea in state court would not hurt his federal case, that only a sentencing in state court would hurt his federal case if the state court sentencing occurred first.  Docket No. 13 at p. 2, ¶ 5.  Mr. Rabenberg asserts that counsel's affidavit supports his version of the facts.  Id.  Counsel wrote "a conviction **and** sentence in state court would be harmful," and that a state court sentencing that preceded a federal sentencing would be harmful.  Docket No. 28 at p. 1 (quoting Docket No. 12 at p.3—emphasis added).  The normal reading of these statements by counsel, Mr. Rabenberg asserts, is that a conviction without a sentencing in state court would not harm Mr. Rabenberg's federal case.  Id.

Mr. Rabenberg states his state court attorney, Koln Fink, told
Mr. Rabenberg that counsel informed Mr. Fink that a plea in state court would
not harm Mr. Rabenberg's federal case, that only a sentencing in state court
would harm Mr. Rabenberg's federal case if the state sentencing took place
before the federal sentencing.  Docket No. 28 at p. 1.  Mr. Rabenberg offers to
sign an attorney-client waiver so as to allow Mr. Fink to testify about this
conversation with Mr. Rabenberg.  Docket No. 13 at p. 3, ¶ 8.

On September 3, 2020, counsel again met with Mr. Rabenberg in person.
See Docket No. 12 at p. 3, ¶ 7.  Counsel reviewed the indictment, maximum
penalties, and USSG again.  Id.  Counsel told Mr. Rabenberg he estimated his
USSG total offense level would be 13, his criminal history points would be 15,
and his projected USSG range would be 33 to 41 months.  Id.  After reviewing
the written plea agreement and factual basis, Mr. Rabenberg signed those
documents.  Id. at p. 4, ¶ 7.  Mr. Rabenberg agrees that, prior to his plea,
counsel estimated his USSG range would be 33 to 41 months.  Docket No. 28
at p. 3, ¶ 9.

On September 8, 2020, Mr. Rabenberg filed a written plea agreement.
CR Docket 18.  He entered a plea of guilty in court on September 14, 2020.
CR Docket No. 22.  Mr. Rabenberg does not attack in any way the validity of
his plea.

Counsel again met with Mr. Rabenberg on September 18, 2020.  Docket
No. 12 at p. 4, ¶ 9.  Counsel reviewed with Mr. Rabenberg his allocution rights
and identified individuals from whom they would seek letters of support.  Id.

There was no discussion at this meeting of Mr. Rabenberg's state court case.  Id.

On September 30, 2020, counsel received a letter from Mr. Rabenberg dated September 28 indicating he had emailed counsel his completed presentence investigation report ("PSR") paperwork and that his Lincoln County jury trial had been postponed indefinitely due to COVID-19.  Id. at p. 5, ¶ 11.

On November 2, 2020, counsel received another letter from Mr. Rabenberg dated October 24, 2020.  Id. at ¶ 12.  Mr. Rabenberg wrote, "I wanted to let you know that the Lincoln County States Attorney, my attorney (Koln Fink) and I entered into a plea agreement to resolve that matter."  Id. Mr. Rabenberg described the terms of that plea agreement in his letter.  Id. Mr. Rabenberg concluded by writing "I will be entering a plea in Lincoln County Circuit Court soon, but sentencing will be delayed until after my Federal Sentencing, for guidelines purposes."  Id.  Counsel did not read Mr. Rabenberg's letter at the time.  Id.

Mr. Rabenberg explained that he communicated with counsel via letter because he was in jail and could not call counsel directly.  Docket No. 28 at p. 4, ¶ 14.  It was Mr. Rabenberg's expectation that counsel would read his letter or at a minimum screen it when it was received and advise him accordingly.  Id.  Counsel admitted that if he had read Mr. Rabenberg's letters when they were received, counsel would most likely have told Mr. Rabenberg

not to enter a plea in his state court case until his federal case was concluded.
Docket No. 12 at p. 6, ¶ 16.

## C.    Events Between Change of Plea Up Through Sentencing

### 1.    Draft PSR

A draft PSR was filed on November 3, 2020.  CR Docket No. 24.  The
draft PSR calculated Mr. Rabenberg's total offense level to be 13.[4]  Id. at p. 5,
¶¶ 12-21.  The PSR calculated Mr. Rabenberg's criminal history points as
follows:

| | | |
|---|---|---|
| 2006 DUI | Turner County | 0 points |
| 2006 DUI | Turner County | 0 points |
| 2006 DUI | Lincoln County | 0 points |
| 2010 DUI third | Turner County | 2 points |
| 2010 Misrep. to Obtain CS | Minnehaha County | 1 point |
| 2010 DUI third | Minnehaha County | 2 points |
| 2015 DUI sixth | Lincoln County | 3 points |
| 2015 Domestic Abuse—SA | Lincoln County | 1 point |
| 2015 Viol. P.O. | Minnehaha County | 1 point |
| Committing instant offense while under a criminal justice sentence (DUI 6th) | | <u>2 points</u> |
| **Total Criminal History Points:** | | **<u>12 points</u>** |

---

[4] The PSR assigned a base offense level of 14, added two levels because the
firearms were stolen, and subtracted three levels for Mr. Rabenberg's timely
acceptance of responsibility.  CR Docket No. 18 at p. 5, ¶¶ 12-21.

Under the USSG, if a defendant has 10, 11, or 12 criminal history points, the defendant is in criminal history category V. <u>See</u> USSG Table. If a defendant has 13 or more criminal history points, the defendant is in the highest possible criminal history category VI. <u>Id.</u> Therefore, only one point separated Mr. Rabenberg from being placed in the highest and most severe criminal history category.

Based on a total offense level of 13 and a criminal history category of V, the draft PSR calculated Mr. Rabenberg's advisory USSG range to be 30 to 37 months' imprisonment. CR Docket No. 18 at p. 17, ¶ 72.

On November 9, 2020, counsel received another letter from Mr. Rabenberg dated October 31, 2020. Docket No. 12 at p. 5, ¶ 13. It began, "I wanted to let you know that I will be in Canton for Court on 11/6/2020 @ 1:30 p.m. It is for the change of plea hearing." <u>Id.</u> He also wrote "I am not going to be sentenced though until after my federal sentencing . . . to avoid any guideline issues." <u>Id.</u> Counsel again did not read Mr. Rabenberg's letter at the time. <u>Id.</u>

Counsel explained he was out of the office trying a federal case in Aberdeen from October 22 to October 30, 2020; upon his return to the office the week of November 2, he was extremely busy. <u>Id.</u> at p. 6, ¶ 14. Counsel did not work on Mr. Rabenberg's case the entire week of November 2, 2020. <u>Id.</u> At least one of Mr. Rabenberg's letters stating his intent to enter a plea in his state court case arrived in counsel's office *before* Mr. Rabenberg actually appeared in state court and entered his Alford plea. Docket No. 12 at p. 5,

9

¶ 12 (stating Mr. Rabenberg's letter of October 24 was received in counsel's office November 2, 2020—the plea was entered November 6).

### 2.    Events in State Court

On November 6, 2020, Mr. Rabenberg entered an Alford plea to count two of his Lincoln County charges asserting the crime of domestic abuse—kidnapping.  Docket No. 12 at p. 5, ¶ 13.  Sentencing in his state court case was set for December 8, 2020, the day after Mr. Rabenberg was scheduled to be sentenced in his federal case pending in this court.  Docket No. 1-1 at p. 2.

Counsel met with Mr. Rabenberg on November 16, 2020, at which time he still had not read Mr. Rabenberg's letters.  See Docket No. 12 at p. 6, ¶ 15.  It was at this meeting counsel learned for the first time that Mr. Rabenberg had entered an Alford plea in his Lincoln County case.  Id.  Counsel stated he had never spoken to Mr. Rabenberg about him entering a plea in his state court case until after he had already entered that plea.  Id. at p. 6, ¶ 16.  Counsel understood from prior conversations with Mr. Rabenberg that he intended to go to trial on the Lincoln County charges, so he was surprised to learn Mr. Rabenberg had entered a plea.  Id.

Counsel does not recall any conversations with Mr. Rabenberg about the effect of a state court plea on his federal sentencing guidelines.  Id.  Counsel did recall discussing with Mr. Rabenberg the need to have his state court jury trial take place after his federal sentencing hearing.  Id.  Had counsel known of Mr. Rabenberg's intent to enter a plea in his state court case, he most likely would have advised against it.  Docket No. 12 at p. 6, ¶ 16.

### 3.    Final PSR

On November 24, 2020, a final PSR was filed.  CR Docket No. 27.  The USSG calculation in the final PSR was the same as in the draft PSR but for one thing:  one (1) point was added to his criminal history points because he had entered an Alford plea on November 6, 2020, to count two of his Lincoln County charges alleging domestic abuse—kidnapping.  Id. at pp. 8-9, ¶ 33. The addition of this one criminal history point bumped Mr. Rabenberg up into the next, and highest, criminal history category of VI.  Id. at p. 10, ¶ 36.  With the new criminal history category of VI, the final PSR now calculated Mr. Rabenberg's USSG range to be 33 to 41 months.  Id. at p. 17, ¶ 72.

Counsel asserts the criminal history points in both the draft PSR and the final PSR were incorrect in that they understated Mr. Rabenberg's true criminal history points.  Docket No. 12 at p. 7, ¶17.  Counsel alleged that Mr. Rabenberg's February 21, 2017, conviction for DUI sixth or subsequent offense should have counted for three criminal history points, but that it was not counted at all.  Id.  Counsel explained that he always advised Mr. Rabenberg he would be in criminal history category VI and that his USSG range would be 33 to 41 months.  Id.

Mr. Rabenberg disputes counsel's allegation about an omission of one of his convictions from the PSRs.  Docket No. 13 at p. 1.  He asserts the February 21, 2017, conviction for sixth or subsequent DUI is a duplicate of the March 10, 2015, conviction; that the two were all one incident, one judicial case, and

11

that the PSR appropriately assessed three points for this one conviction.  Id. at

pp. 1-2 (referencing Lincoln County criminal file #41CRI15-00178).  Id. at p. 2.

It appears Mr. Rabenberg is correct and counsel is incorrect on this

issue.  The bond report (on which counsel stated he relied), shows

Mr. Rabenberg was arrested for DUI sixth or subsequent on March 10, 2015,

and on November 19, 2015, was sentenced to seven years' imprisonment which

was suspended on the condition Mr. Rabenberg successfully complete five

years of probation.  CR Docket No. 5 at p. 3.  Then, on February 21, 2017,

Mr. Rabenberg's probation was revoked, his suspended sentence was revoked,

and the seven-year prison sentence was imposed.  Id.  However, there is a

separate entry for DUI on the bond report showing an arrest and sentencing

date of February 21, 2017.  Id. at p. 4.  This is not a separate crime, but rather

the imposition of the suspended sentence from the 2015 charge.  Compare CR

Docket No. 5 at p. 3, with id. at p. 4.

The PSR adds detail to this.  That document explains that

Mr. Rabenberg's probation was revoked because Mr. Rabenberg tested positive

for methamphetamine on three occasions, missed drug tests for a six-week

period, and tested positive for alcohol on one occasion.  CR Docket No. 27 at

p. 8, ¶ 30.  Thus, Mr. Rabenberg committed the offense of DUI sixth or

subsequent only once, in 2015, and he was appropriately assessed three

points, not six, for this one conviction, all falling under Lincoln County state

court case number 41CRI15-00178.  Id. at pp. 7-8, ¶ 30; CR Docket No. 5 at

p. 3.  There was no second conviction in February 2017 for DUI sixth or subsequent.

Counsel received a letter from Mr. Rabenberg on November 10, 2020. See Docket No. 12 at pp. 7-8, ¶ 18.  The letter contained Mr. Rabenberg's objections to the PSR.  Id.  Mr. Rabenberg asked counsel to notify United States Probation that he had entered an Alford plea to domestic abuse—kidnapping and included with his letter a statement of facts from his state court plea.  Id.  Mr. Rabenberg believed it would benefit him for the court to know he did not plead guilty to the pending charge of domestic abuse—rape and that the factual statement included no facts supporting a rape charge.  Id.

Counsel made a tactical decision to inform Probation about the state court plea.  Id. at p. 8, ¶ 19.  He believed the fact of the plea would almost certainly be revealed at sentencing and Mr. Rabenberg should "get out ahead of that" inevitability by revealing it himself.  Id.  Counsel did not consider the effect the state court plea would have on Mr. Rabenberg's USSG calculation as he was only thinking about diffusing the effect of the rape allegation so as to pave the way for a downward variance.  Id.

### 4.    Sentencing Hearing

Mr. Rabenberg was sentenced on December 7, 2020.  CR Docket No. 38. Counsel did not object to the final PSR, but did move for a downward variance and a sentence of 18 months.  Id. at pp. 5 & 7-9.  Counsel did address Mr. Rabenberg's criminal history points, but only to assert that the majority of those points (7) stemmed from DUIs.  Id. at p. 8.

13

Mr. Rabenberg filed a written allocution statement and also addressed the court orally at the sentencing hearing; he did not object to the USSG calculation or mention the criminal history points.  CR Docket Nos. 31 and 38 at pp. 9-12.  The court imposed a sentence of 33 months' imprisonment, at the very bottom of the USSG range.  In sentencing Mr. Rabenberg, the court made the following statements:

> Mr. Rabenberg, from the [PSR] I could tell that when you were young you got a really good start.  You were involved in 4H, FFA, almost got your associates degree in college.  So you had a really good start in life.  And then it looks like first alcohol and then drugs started causing you a lot of problems.
>
> * * *
>
> And you also have some underlying mental health issues: PTSD and depression. . . .  When you're on your meds, you do really well.  But when you quit taking your meds is when you really start struggling. . . .
>
> You've—I looked at your work history.  You've had a lot of jobs.  You've been a hard worker.  So I know if you have employment, you're willing to try to do your best.
>
> * * *
>
> Your dad in his letter said that you should not drink at all.  That you're one of those people that if you have one sip, you can't stop.  I see that more often than I would like.  But that's something you've got to recognize is an issue for you.  You can't drink.  You can't drink at all. . . .
>
> * * *
>
> [T]here are some people that just can't stop once they've started.  And it sounds like you fit into that category.  And we all want you to be successful and not get into trouble again. . . .
>
> You know, the thing that concerned me the most about your case is that the reason you had this firearm and you took it from [your girlfriend] is that you wanted to pawn it and then use the

money to pay a drug debt.  As you said in your letter, the combination of guns and drugs is not a good combination.  That's when people get injured, killed.  I see a lot of really bad ramifications from the combination of drugs and guns.  So hopefully when you finish your time in custody you won't drink, you won't use drugs, and we'll be able to keep you and everybody else safe so that this doesn't happen again.  And I think if you make sure you take your medication on a regular basis, that that will help stabilize things too.

\* \* \*

I am going to have your sentence run concurrent with your state court sentence because I do think that the two things are interrelated.

\* \* \*

Because you're in criminal history category VI and because this involved the combination of drugs and guns, I think that a sentence within the guideline range is the appropriate sentence, but I will sentence you at the bottom of that range to 33 months in custody.

See CR Docket No. 38 at pp. 16-20.  The above passages show that the court was concerned enough about Mr. Rabenberg's criminal conduct that it felt a within-guidelines sentence was appropriate, but the court was not incensed or outraged.  Rather, it reflects the overarching desire to punish Mr. Rabenberg appropriately, but also to provide conditions of supervision and assistance to help Mr. Rabenberg reach his potential.

The government now moves to dismiss Mr. Rabenberg's § 2255 motion without holding an evidentiary hearing.  Docket No. 19.  Mr. Rabenberg resists the motion, arguing that questions of fact necessitate the holding of an evidentiary hearing.  Docket Nos. 22, 27, 28 & 29.

## DISCUSSION

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has

16

read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654

17

(8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Rule 12(b)(6) Standard**

The government's motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules"). See Governing Rule 12. Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules. Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with Fed. R. Civ. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that Federal Rule of Civil Procedure 12(b)(6) applies in habeas proceedings).

Rule 12(b)(6) allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is

18

entitled to relief." Id. at 555 (quoting FED. R. CIV. P. 8(a)(2)).  A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) & Papasan v. Allain, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition.  Id. (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has

19

*alleged*—but has not "show[n]"—that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-80.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondent's motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition transcripts and other items extraneous to the petition in determining whether to grant the motion.  See FED. R. CIV. P. 56.

Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however.  Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (citing

Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)

(quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure

§ 1357 (3d ed. 2004))).

Here, the court has considered documents from the underlying criminal

proceedings in compliance with Governing Rules 4(b) and 5(c).  Because these

documents are of the type which the court would be allowed judicial notice, the

court considers these documents in ruling on respondent's Rule 12(b)(6)

motion.  Dittmer Props., L.P., 708 F.3d at 1021; FED. R. EVID. 201(b); Governing

Rules 4(b) & 5(c).

## C.     Ineffective Assistance Claim

### 1.     Standard for Ineffective Assistance of Counsel Claims

Mr. Rabenberg's sole claim is that his Sixth Amendment right to the

effective assistance of counsel was violated.  The Sixth Amendment of the

Constitution of the United States affords a criminal defendant with the right to

assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has

recognized that 'the right to counsel is the right to the effective assistance of

counsel.' "  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting

McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  Strickland is the

benchmark case for determining if counsel's assistance was so defective as to

violate a criminal defendant's Sixth Amendment rights and require reversal of a

conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of

counsel's assistance, the defendant must show that counsel's representation

fell below an objective standard of reasonableness." Id. at 687-88.  The

defendant must also show that counsel's unreasonable errors or deficiencies

prejudiced the defense and affected the judgment.  Id. at 691.  The defendant

must show "there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id.

"There is a presumption that any challenged action was sound trial

strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment."  Hall v.

Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the

petitioner's burden to overcome this presumption, and a "petitioner cannot

build a showing of prejudice on a series of errors, none of which would by itself

meet the prejudice test."  Id.

Counsel's conduct must be judged by the standards for legal

representation which existed at the time of the representation, not by

standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S.

4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is; they are not its definitive definition.  Id.

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009) (quotation omitted).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation."  Id. at 40-41 (internal quotation omitted, cleaned up).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome."  Id. at 44 (quotation omitted).  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

## 2.    Application of the Standard to Mr. Rabenberg's Claim

Mr. Rabenberg succinctly and eloquently states his claim:

> The underlying issue is not that I was improperly advised of my guidelines range.  The underlying issue is that my range that was determined by the United States Probation Office in the draft version of the PSR was in criminal history category V with a corresponding guidelines range of 30 to 37 months.  That is not an estimate but a fact.  It is also a fact that between completion of the

draft and final versions of the PSR, that I accrued one additional criminal history point for my November 6, 2020 guilty/Alford plea in state court.

It is also a fact that the one singular point took me from criminal history category V to criminal history category VI and increased [my] applicable guidelines range by 3 months.  It is also fact that I was informed by state court counsel that my sentencing guideline would not be impacted by entering the plea in state court as long as sentencing was delayed until after my sentencing in the federal matter.  It was reported to me by my state court counsel that he had personally spoken to Mr. Powers who advised him of such.

This was in line with a statement that Mr. Powers had made to me previously [in August 2020]. . . .  Mr. Powers told me then that if I was found guilty on the state charge(s) and delayed sentencing that I "would be fine, as long as you are not sentenced."

See Docket No. 28 at pp. 3-4, ¶¶ 10-11.

In addition to these oral assurances, Mr. Rabenberg took the added step of advising counsel *prior to* his plea in state court of his intent to plead.  Id. at p. 4, ¶ 14.  Mr. Rabenberg's intent in writing to counsel was to receive advice and/or assurances that if he entered a plea in state court, it would not harm his federal case.  Id.

Here, we have an email from counsel to Mr. Rabenberg's state court lawyer that is ambiguous and susceptible of an interpretation that a plea in state court would not harm Mr. Rabenberg's federal case, that only a sentencing in state court could pose harm.  We also have Mr. Rabenberg's statement that counsel orally gave him this same advice in August 2020.  We have Mr. Rabenberg's statement that his state court counsel told him federal counsel gave him the same advice.  We also have Mr. Rabenberg's letters to counsel which, if they had been timely read, would likely have resulted in

24

counsel advising Mr. Rabenberg not to plead guilty in state court.  Finally, although the USSG ranges associated with criminal history categories V and VI overlap, the court expressed a desire to sentence Mr. Rabenberg at the bottom of the USSG range.  The bottoms of the two ranges differ by three months.  In Mr. Rabenberg's view, he is serving an extra three months' imprisonment that he likely would not have had to serve but for counsel's error.

Mr. Rabenberg cites United States v. Galanis, 759 F. App'x 88 (2d Cir. 2019) in support of his claim.  In the Galanis case, the defendant was facing two separate federal cases.  Id. at 89.  In one case (case #1), he was represented by counsel; in the other case (case #2) he was temporarily proceeding *pro se*.  Id. at 89-90.  During this interval, the government offered the defendant a combined plea agreement that would have disposed of both cases in one plea and sentencing.  Id.  Because he was unrepresented in case #2 at that time, the defendant did not accept the combined plea agreement, but instead agreed to plead guilty in case #1 in which he was represented.  Id. at 90.  Subsequently, after counsel had been appointed for the defendant in case #2, he entered a plea of guilty in that case too.  Id.  Counsel in case #2 unsuccessfully sought to resurrect the government's offer for a combined plea that would conclude both cases.  Id. at 92.

The plea agreement in case #1 stipulated to a USSG range of 121 to 151 months.  Id. at 90.  However, because the defendant had entered a plea in case #2 in between the plea and sentencing in case #1, it bumped the defendant's criminal history category up from II to III, resulting in a higher

USSG range of 135 to 168 months.  Id.  The court imposed a sentence of 135 months' imprisonment in case #1, the bottom of the increased USSG range.  Id.

In case #2, the plea agreement stipulated to a USSG range of 188 to 235 months.  Id.  The court sentenced the defendant in case #2 to 188 months' imprisonment, the bottom of that USSG range, but ordered that 60 months of the sentence in case #2 should run consecutively to the sentence imposed in case #1.  Id.

The defendant filed a motion to vacate his sentence, alleging counsel in case #1 was ineffective.[5]  Id. at 90-91.  That motion was stayed pending the circuit court's resolution of the defendant's consolidated direct appeal of both convictions.  Id. at 91.  The issue raised on appeal was ineffective assistance of counsel.  Id. at 89.

The court reiterated the familiar Strickland standard.  Id. at 91.  It stated that to show deficient representation, the defendant must show that counsel failed to communicate a formal plea offer to him or that counsel failed to tell him of the strengths and weaknesses of the case against him as well as "the alternative sentences to which he will most likely be exposed."  Id. (quoting Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000)).

To prove prejudice in the context of a plea offer, the defendant was required to show that, but for counsel's errors, there is a reasonable probability

---

[5] The defendant's motion in Galanis was pursuant to Federal Rule of Criminal Procedure 33, not 28 U.S.C. § 2255.  Rule 33 allows a district court to vacate any judgment, take additional testimony and enter a new judgment if it is in the interests of justice.  See FED. R. CRIM. P. 33(a).

that (1) he would have accepted a plea offer, (2) the plea offer would not have been withdrawn by the prosecution in light of intervening circumstances, (3) the court would have accepted the terms of the plea offer, and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)).

Under the facts presented, the court concluded it had "serious questions as to whether [the defendant] received effective assistance of counsel." Id. The defendant's retained counsel in case #1 were under time constraints and were not being paid, leading to the inference that they imposed a hasty decision to plead to case #1 on the defendant. Id. Also, counsel in case #1 discussed with the defendant only the plea offer as to case #1; they never discussed the merits of accepting the combined plea offer as to cases #1 and #2. Id. at 92.

The court concluded that, if the defendant's assertions were correct, he accepted the plea offer in case #1 without any advice regarding whether entering separate pleas in the two cases would result in a higher criminal history category and, thus, a longer sentence. Id. The court noted the prejudice to the defendant was not just that his criminal history category in both cases was increased, but also that he was subjected to the possibility (which became reality) of consecutive sentences. Id. at 92.

The court noted both district courts sentenced at the bottoms of each of the respective USSG ranges, but that those ranges were higher to begin with because of the plea to case #1 and the possibility of consecutive sentences

27

became a reality as to 60 months. Id. The combined plea agreement to both cases #1 and #2 contemplated a USSG range of 168 to 210 months' imprisonment, while the defendant's actual effective sentence ended up being 195 months. Id.

Although the defendant's actual sentence was still within the original range of the combined plea agreement, the court noted that, if he had been sentenced at the bottom of the USSG range, his sentence would have been 168 months under the combined plea, a difference of 27 months. Id. at 92-93. The court reversed and remanded, directing the district court to develop the record in the form of taking live testimony, affidavits and briefs. Id. at 93.

The Galanis case provides support for Mr. Rabenberg's position. Mr. Rabenberg has alleged that counsel failed to tell him of "the alternative sentences to which he will most likely be exposed." Galanis, 759 F. App'x at 91. In addition, he has alleged he would have postponed a resolution of his state court case, including postponing the entry of a plea, until after his federal sentencing had counsel so advised.

There is authority in the Eighth Circuit holding that where an objection to a PSR, if it had been made and sustained, yields the same potential sentence under the USSG, a petitioner under § 2255 cannot establish Strickland prejudice as a matter of law based on the petitioner's lawyer's failure to lodge the objection. See Montanye v. United States, 77 F.3d 226, 230-31 (8th Cir. 1996) (where the petitioner was sentenced to 360 months' incarceration, and the Guidelines range was 360 months to life under the PSR as written, but also

28

the same range if the objection had been made and sustained, petitioner could not show prejudice). Cf. Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255 attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted § 2255 relief).

The court finds these cases distinguishable. Here, Mr. Rabenberg is not arguing that counsel should have objected to his USSG calculation. Furthermore, there is no doubt that the USSG range *would have* been different had counsel told Mr. Rabenberg not to plead guilty to his state case prior to his federal sentencing. If counsel had timely read Mr. Rabenberg's letters, it is likely counsel *would have* advised Mr. Rabenberg not to plead in his state case. Also, as Mr. Rabenberg points out, not only was his sentencing range higher because of counsel's alleged error, but if he ever violates a condition of supervised release, that potential penalty is higher too because of the change from criminal history category V to VI. Docket No. 28 at pp. 2-3, ¶ 8.

The court points out, too, that this is not a "he said; he said" scenario. Counsel's affidavit partially supports Mr. Rabenberg's argument. Furthermore, no testimony or affidavit from Mr. Rabenberg's state court counsel, Koln Fink, is of record. That evidence, too, should be developed before a final decision is made. The Supreme Court has counseled that the evaluation of Strickland prejudice requires consideration of the totality of the circumstances. Porter, 558 U.S. at 40-41.

Prejudice under <u>Strickland</u> does not require Mr. Rabenberg to demonstrate that the result more than likely would have been different but for counsel's alleged error.  <u>Id.</u> at 44.  Instead, he is only required to show "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.  Here, based on the record and the procedural posture of the government's case (a Rule 12(b)(6) motion), the court believes Mr. Rabenberg has pleaded facts which are plausible and, if true, entitle him to relief.  The court therefore recommends denying the government's motion to dismiss and holding an evidentiary hearing.

The government misconstrues Mr. Rabenberg's petition and, as a result, its arguments are misplaced.  For example, the government argues that in order to succeed, Mr. Rabenberg must allege that, without counsel's error, he would not have pleaded guilty in his federal case and would have insisted on going to trial.  That would be the standard if Mr. Rabenberg were arguing that counsel erred by recommending he plead guilty in his federal case, but that is clearly ***not*** what Mr. Rabenberg is arguing.  Refreshingly, he admits he was guilty of the federal charge and that his plea was voluntary and intelligent.

It is counsel's advice regarding the coordination of his two cases, state and federal, that Mr. Rabenberg alleges to be error.  Furthermore, the government filed no reply to Mr. Rabenberg's responses in opposition, so the government never responded to his true arguments or to his reliance on the <u>Galanis</u> case.  The government cites to no legal authority which would show that Mr. Rabenberg is not entitled to relief on the facts presented.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends denying the government's motion to dismiss [Docket No. 19], setting this matter for an evidentiary hearing, and appointing counsel to represent Mr. Rabenberg at that hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 23rd day of August, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge